And Ms. Young, before you begin, I have some questions that may seem a little out of left field, so I may let you have a little extra time today. So don't worry. You don't need to feel like you've got to rush through, because I don't want to gobble up all your time with my questions. So I'll be a little flexible with your time today, OK? OK. Thank you, Your Honor. Sure. Catherine Young from the Federal Public Defender's Office for the appellant Remigio Alvarez Herrera. I'd like to reserve about four minutes of my time, and I will watch the clock. Mr. Herrera contends that the district court erred in denying his motion to suppress. And the first issue I'm going to turn to is the fact that the search warrant affidavit contained material misrepresentations. So let me just, this is where I'm going to jump in. Absolutely, Your Honor. I want to warn you ahead of time. Please. All right. So the search in this case that I think you're contesting is a search of the vehicle, correct? Yes. I thought that the Supreme Court case law still says that warrantless searches of vehicles are permitted. Well, I think that's in the context of a traffic stop, if that's what Your Honor is talking about. So do you think the current state of Supreme Court law is that if you have probable cause to search a car that's parked, not a traffic stop, does the Supreme Court now require a Well, I don't think they had any probable cause or reasonable suspicion. Okay, different question, right? So we've got probable cause to search a car and we've got the warrant. I'm going to ask Mr. Fitzgerald the same question. If the Supreme Court permits searches of vehicles without a warrant, then it seems to me the question in this case, and maybe I'm wrong, push back on me if I'm wrong, and if you want time to think about it under 28J, that's fine as well, but if the question is whether or not you can search the vehicle under probable cause, then it seems to me there's been a case about the warrant. I'm not sure at the end of the day, I understand why it's better for the government if they have a sustained warrant, but even if the warrant's bad for some reason, if there was probable cause to search the car, when the guy walks out of the house with the phone and the number of the phone, taped to the phone is the same number they've been hearing on the wire, or they've been seeing on the BlackBerry messages, do we even need to get into the warrant? Isn't the real inquiry here whether there was probable cause to search the car at the time they searched it? So, that's why I say it's a curveball, but I just want to make sure, am I wrong to say that a warrantless search of a car is still permitted under Supreme Court law, assuming there's probable cause? Well, I think that's in the context of a traffic stop. If in a traffic stop they have probable cause to search the car, then that's acceptable. In this case, we're talking about a situation where there was no traffic stop. He was in the house. Sure. And he walked out of the house, and at that point they stopped him and executed the search warrant. Fair enough. Go on with your argument. I just want to ask the question. Okay, well in that case where the car is just sitting on the street, I would argue it's different from a traffic stop where if they have probable cause for the traffic stop, or there's something about the method of driving or the licensing or the tinted windows, which they often use as an excuse, gives them probable cause or reasonable suspicion, then they can do the search. In this case, the car was sitting on the street. It wasn't even his car, although he did have the fob to it. He was just walking out of his house, and that's when they conducted the search. So now ignore what I said and go on. Okay. So, a little bit of background. On January 6th, 2017, there was an intercept with an investigation of a drug trafficking organization that indicated that someone with a target telephone number would be picking up 21 kilos of narcotics. And on January 7th, 2017, Waldron submitted an affidavit to obtain a search warrant to search Mr. Herrera's residence and a car that he was driving. And that affidavit is the subject of our challenge. As established in the opening brief, the affidavit contained material misrepresentations. And the first one that I'm going to focus on is the fact how they identified Mr. Herrera's And significantly, Waldron misrepresented that the coordinates for the telephone gave law enforcement the target location address, which was Mr. Herrera's residence. Waldron swore under oath that, upon receiving the coordinates for the device, investigators learned of the address, which was the target location. And that was not true, as the motion established. The government's own evidence demonstrated that GPS coordinates do not identify a specific address. The motion cited DEA reports that indicate that the error range may be as much as 960 meters. The Herrera obtained the services of an expert who analyzed the data and said that the pings came from next door to the target location, diagonally across the street, in another city, multi-unit living structures. So in other words, the representation that Waldron made was incorrect because the data from the pings did not identify the target location. And we also submitted, or the defense also submitted to the district court, other search warrant affidavits in other cases in which the officers were honest about the limitations of GPS data. Those affidavits represented that GPS data is not accurate and that the range is so large that investigators cannot determine an exact location from GPS data. How did the district, I assume you raised this in the district court, how did the district court judge rule on the issue? The district court ruled that, and this is one of the arguments that we claim was clearly erroneous. He says, it strikes me you have war top intercepts warning the officers of this narcotics drop off. And then he says there's later intercepts show that the defendant picked up the narcotics and you have physical surveillance. So he really didn't address the issue of the fact that the GPS data did not identify the target location. He said that he relied on other facts. At the time the district court made that representation, did you, did counsel challenge and indicate to the district judge that he is wrong and give the reasons you gave us? The defense lawyer was in fact very vocal and in fact filed a motion for reconsideration because he believed so strongly in the merits of this claim. I just wonder whether or not it was waived. What sort of a response did you make, did counsel make at the trial court on this issue? Was it objective? He did object. He was very vociferous about the issue. On what basis did he call to the attention of the district judge that the method used was incorrect? He had numerous affidavits from other cases in which the officers had accurately represented the limitations of GPS data. He had retained an expert to show that the GPS data in this case could not identify the communities across the street in multi-unit living communities and he had various attacks that he made and evidence, it was quite voluminous and then he filed a motion for reconsideration because he believed so strongly in this argument. The district court responded in what way? The district court felt that there was other evidence that he found sufficiently convincing that we argue is also clearly erroneous. Thank you. Thank you, Your Honor. So let me move on to the next claim why we feel that the Waldron's affidavit had misrepresentations. He also misled the magistrate into believing that investigators knew evidence that they were actually just speculating about based upon the unreliable and inaccurate ping data. For example, he said he represented the magistrate that law enforcement established surveillance and learned that the user of the device was traveling. He arrived at a rails parking lot, stayed there, drove directly back to the target's location and he falsely represented that the GPS data were in unison with the travel of the Hispanic male. And he had no way to know if the GPS data were in unison because they had actually no physical surveillance even though at the beginning of his paragraph he represented that there was physical surveillance. And I think that my time is almost up so unless, are there any further questions or should I reserve the remainder of my time? You can go ahead and reserve and we'll give her the four minutes that she requested. Oh, one more. We do. Yes. Go, Judge Wallace. Yes, absolutely, Your Honor. I have a question. I'm just trying to get my arms around what's going on in the district court and I just wonder why these omissions were material. There is an argument going on as to whether or not they're accurate but why are the omissions material to the outcome? Well the identification of the target location was essential for them to follow the pickup of the drugs and we're claiming that he misrepresented how they identified the target location. Okay. Now we don't, I'm sorry. But the point is whatever happened they did identify the house maybe incorrectly so what is the response? Isn't it sort of no harm, no foul? Well our argument would be, Your Honor, that when there's a misrepresentation in an affidavit that misrepresentation has to be stricken from the affidavit. And in this case... The whole thing, no matter whether it was material to the actual taking place, anything that is inappropriate strikes the whole process. No, I'm sorry. I apologize. Go ahead. I'm sorry, I didn't mean to interrupt you. No. We're saying that everything that is misrepresentation should be stricken. So that sentence that upon receiving the coordinates they identified the target location would be stricken. And therefore there's no nexus to the target location. And that would be our argument. So in other words you're saying that you wouldn't strip out everything from the affidavit but basically you're stripping out enough that the whole thing collapses. We're stripping out everything that is a misrepresentation, Your Honor. That would be our argument. And that would leave you with no nexus to the target location and no surveillance of the drugs as they allegedly traveled to Cerritos, America. All right, thank you. We'll still give her the four minutes. Thank you. Thank you, Counsel. Good morning and may it please the Court. Patrick Fitzgerald on behalf of the United States. To address first the question that Judge Owens raised about a warrantless search of the car. Obviously the automobile exception to the warrant requirement presumes that a warrant would not be available or as a practical matter are often difficult to get. Here of course the agents were working kind of around the clock once they learned about the telephone number and the likely drug deal. But they got in and put in an affidavit. They got the warrant. So if there were a problem with that warrant hypothetically how that would interact with the automobile exception is an interesting issue. It's one that if the Court feels is important we could certainly address on a 28-J basis. I will say here that it is obvious from this record that there was ample probable cause for a search of the automobile by the time it took place. Do you say that even if we were to strip out of the affidavit supporting the warrant that which the other side says has to be stripped out? Well Your Honor, getting back then to the warrant analysis and the Frank's analysis. First we disagree that the statements that Special Agent Waldron did were false. They were a summary of what occurred in the investigation. Of course every affidavit is ultimately going to be a summary of the investigation. Here because it was important to tie in the telephone number that was obtained from the wiretap to an actual physical device, that attribution was important. As we said in the District Court and we said in our brief, we agree that in an ideal world there would have been more detail about how the agents did it. I maybe wasn't precise enough in my question. The argument from the other side is that there was some representation that the ping information was much more precise in terms of location. That I think is a fair reading of some of the supporting information that gave rise to the search warrant. So I think to that extent it was inaccurate. If we strip out the inaccurate information that supports the issuance of the search warrant, is there nonetheless enough probable cause to support the warrant? Yes, Your Honor, because first I think when it comes to stripping out the full context has to be reviewed. Here it was the defendant's burden to both show that there was a recklessness or a willfulness and then to also show materiality. At this stage a substantial preliminary showing. And I think when the full explanation of what occurred in the investigation takes place, it shows that there was not materiality and there was not... Let me go at it this way. Just tell me what legitimate information that we can look at that supports the issuance of the warrant. Just go through that information so you try to convince me that there's probable cause given the information that we're clearly allowed to look at. Yes, Your Honor. There is obviously the overall context that a drug deal was going to take place and then a certain telephone was going to be used in that drug deal. The agents obtained a GPS tracking warrant and that they said after they obtained that GPS tracking warrant, they were able to identify the particular location where that was, namely the subject premises and then the car, the defendant's Nissan. And by going through that again, it was as the agent said in the warrant, there was a the overall context in which the events occurred and in particular, Officer Avila said that when the defendant's car returned to his house, through the surveillance, they were able to see that the tracking information and the surveillance information matched up and the defendant walked out of the car after having driven to the Cerritos area and coming back. So again, I think with all of that information, that certainly was more than enough for probable cause and certainly when looking at the information that was in the affidavit, while the attribution was not as specific as would have been ideal when it's looked in the context of the overall investigation, there was nothing, the omissions were not material and also that they were not willful or reckless. And there wasn't even a substantial preliminary showing that they were willful or reckless. It was just an aggressive summary of what happened. And when you put in more details and fill in the summary, it's not something where the... No, you said aggressive. Is that a synonym for inaccurate? No, Your Honor. I respectfully say if you look at what the agent said, again, in the affidavit, he did not make specific false statements that are now being ascribed to him to the defense. He stated what happened, but it certainly was at a level of generality where the magistrate judge could have understood the specific sequence of what happened and the interplay of the surveillance and the tracking information in a way that was not consistent with all the details of what happened. So I don't think it was inaccurate. I think it was very general. But then when we look behind it, we see both that that level of generality was not material and it certainly was not reckless or willful. And therefore, the district court was correct in saying that the defendant who had the burden in the district court and has a burden here, the defendant had not met his burden. Unless you have anything. Oh, go ahead, Judge Wallace. Go ahead, Judge Wallace. Thank you. Could I follow up with Judge Fletcher's interesting question, which I think was your answer was very helpful. But I sort of looking at this as in another context, very often my experience of listening to these in the district court is they're not always perfect because of the very nature of the animal. And I wonder if additional detail missing from the evidence was how we should treat that. That is, we could treat it as omissions or misstatements resulting from negligence or secondly, good faith mistakes. What does the record show? Was the police department negligent in their process or was there good faith mistakes? Could you sort of focus on that area for me? Yes, Your Honor. I think, again, as far as the investigation itself, it was a thorough and well done investigation. So really, the issue is how that investigation was portrayed in the affidavit. And again, it's easy to criticize with 20-20 hindsight or hope that there would be, to use a felicitous phrase, Lake Tahoe clarity in the affidavit as to what happened. But I think realistically, this was more, again, a mistake by doing too general a description by someone who, to be fair, was in the middle of a very fast paced investigation. And these agents obviously were building the airplane while they were flying it. But I think it can then best be described as, in retrospect, a mistake in not providing more detail on the attribution on how the telephone number that came from the wiretap was connected to the actual physical house and car and person. All right. Thank you very much, counsel. Ms. Young, you have four minutes. Thank you. I'll be very brief. I just wanted to address the issue of whether these were omissions or misstatements, because our position is that they're affirmative misstatements and not omissions. And the prosecutor, in describing what happened, as well as below and in the answering brief and in the declarations, they all describe what happened differently. But they never explain why the misrepresentations were made. But it's clear that these are not omissions. They're misrepresentations. For example, Waldron represented in the affidavit that upon receiving the coordinates, we learned of the address. So he's not saying that afterwards we learned about it, we did additional stuff. He said the minute we got those coordinates, we had the address in hand. The second misrepresentation is that he talks about how we established surveillance. We did all this. We learned about it. And then he says the GPS were in unison with the travel. In other words, indicating that there had been physical surveillance of the travel to Cerritos and back, when in fact there were none. It was based totally on pings, which are extremely unreliable. So our position is that these are misrepresentations. They're not omissions and that they should be stricken. And without those misrepresentations, there's no probable cause. So unless there's any questions, I'll submit. Great. Thank you very much, counsel. Thank you both of you for your briefing and argument in this case. This matter is submitted.
judges: WALLACE, FLETCHER, OWENS